UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | |
|---|---|
| LINDA SUE PRIDEMORE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. _____ |
| ) | |
| COLUMBIA GAS OF KENTUCKY, ) | |
| INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**NISOURCE INC.'S AND COLUMBIA GAS OF KENTUCKY INC.'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, Defendant NiSource Inc. ("NiSource") and Defendant and Third-Party Plaintiff Columbia Gas of Kentucky Inc. ("CKY") by counsel, hereby remove this action from the Knott Circuit Court in Hindman, Kentucky, to the United States District Court for the Eastern District of Kentucky, Pikeville Division. In support of this Notice of Removal, NiSource and CKY state as follows:

**I.  Introduction And Relevant Background.**

1. On March 23, 2021, Samantha Campbell ("Ms. Campbell"), as Guardian and Next Friend of Linda Sue Pridemore and Tommy Lee Caudill ("Plaintiffs"), initiated this action by filing her Original Complaint against CKY and certain "Unknown Defendants." Ms. Campbell, however, did not serve CKY until March 30, 2021.

2. On April 6, 2021, CKY agreed to accepted service of Ms. Campbell's Amended Complaint. The Amended Complaint once again named CKY and "Unknown Defendants" as Defendants but added Michael Jacobs as an individual Defendant. The parties also agreed that CKY had up to and including April 26, 2021, to file all required responsive pleadings.

3. Ms. Campbell's Amended Complaint alleged that on or about February 27, 2021, Linda Sue Pridemore and Tommy Lee Caudill were injured when their home exploded due to an alleged buildup of natural gas (the "Incident").[1]  (Am. Compl. ¶¶ 6-7.)  The Subject Home, however, did not have natural gas service.  (*Id.* ¶¶ 9, 11.)

4. Ms. Campbell's Amended Complaint brought a cause of action against CKY based on theories of negligence.  (*Id.* ¶¶ 5-20.)  Ms. Campbell alleged that the Incident caused Linda Sue Pridemore and Tommy Lee Caudill to suffer medical expenses, pain and suffering and lost wages, among other things.  (*Id.* ¶¶ 13-20.)

5. On April 23, 2021, CKY filed a Motion to Dismiss Ms. Campbell's Amended Complaint.  CKY argued that none of Ms. Campbell's allegations entitled her to recover damages from CKY for two reasons.  First, CKY argued that Ms. Campbell's strict liability allegations (to the extent she intended to assert such allegations) failed to state a cause of action against CKY because Kentucky exempts the operation of a natural gas pipeline from the scope of strict liability.[2]  Second, CKY argued that Ms. Campbell's negligence allegations failed to describe or imply any duty of action or inaction by CKY related to the Incident.  Indeed, CKY argued that Ms. Campbell's Amended Complaint unambiguously alleged that the superseding and unforeseeable negligent actions of either or both the Unknown Defendants and Defendant Michael Jacobs caused Linda Sue Pridemore's and Tommy Lee Caudill's injuries.

---

[1] Ms. Campbell alleged that Linda Sue Pridemore and Tommy Lee Caudill lived at 6560 Kentucky Route 899, Pippa Passes, Kentucky 41844 (the "Subject Home").  (*Id.*)

[2] It remains both CKY's and NiSource's position that it is settled Kentucky law that a natural gas company's transmission of natural gas is not an "ultra-hazardous" activity subject to strict liability. *See, e.g.*, *Workman v. Columbia Nat. Res.*, 864 F. Supp. 638, 642 (E.D. Ky. 1994); *Fields v. W. Ky. Gas Co.*, 478 S.W.2d 20, 23 (Ky. App. 1978); *see also Louisville Gas Co. v. Guelat*, 150 S.W. 656, 657 (Ky. 1912).

6.     Notably, Exhibit A to Ms. Campbell's Amended Complaint reflected that Defendant Michael Jacobs was employed by the Knott County Water and Sewer District ("KCWSD") when he performed certain excavation operations in the vicinity of the subject natural gas pipeline. (*Id.* Exhibit A at 1.) Exhibit A to Ms. Campbell's Amended Complaint is a KCWSD work order for Linda Sue Pridemore. (*Id.*) The work order reflects that the KCWSD, and specifically Defendant Michael Jacobs, completed a high priority service at the Subject Home on or about January 15, 2021. (*Id.*) The work order's "completed notes" also detail that the KCWSD and/or Defendant Michael Jacobs "[d]ug up to the road found a clean out run [sic] a snake through the line to the house and unstopped Line to the house. Customer's line is on to [sic] much of a [sic] incline to drain correct." (*Id.*) The work order supported Ms. Campbell's allegations that the Unknown Defendants and Defendant Michael Jacobs performed "excavation operations" or "operations" near CKY's gas pipeline, which caused CKY's natural gas pipeline to become damaged and leak gas. (*Id.* ¶ 28; *see also id.* ¶ 21.) Ms. Campbell did not name the KCWSD as a Defendant in either the Original Complaint or the Amended Complaint, however.

7.     On May 3, 2021, CKY filed a Motion to Require Ms. Campbell to Amend Her Amended Complaint. CKY argued that Ms. Campbell knew the identity of at least one of the Unknown Defendants—the KCWSD.[3] Consequently, CKY argued that Kentucky Rule of Civil Procedure ("CR") 4.15 required Ms. Campbell to Amend Her Amended Complaint. *See* CR 4.15(b) (stating that if the "name and place of residence, or either" of an unknown defendant is

---

[3] Among other things, CKY's Motion to Require Plaintiff to Amend Her Amended Complaint referenced a report from the Kentucky State Fire Marshal's Office summarizing that a KCWSD employee admitted to "hit[ting] the line while digging was ongoing on January 14, 2021 . . . ." That report goes on to state that "an employee of the [KCWSD] had used . . . brass compression fittings to repair the service line." (*See* Kentucky State Fire Marshal Incident Report, BATS ID: 1382656, attached as Exhibit 2 to CKY's Motion to Require Ms. Campbell to Amend Her Amended Complaint.)

3

discovered by the plaintiff, "the complaint *shall* be amended accordingly" (emphasis added)). CKY also noted in a footnote that "[i]f [Ms. Campbell] does not amend her Amended Complaint and name the KCWSD as a Defendant, CKY will be forced to seek leave to file a third-party complaint against the KCWSD . . . to protect its rights." (*See* CKY's Motion to Require Plaintiff to Amend the Amended Complaint at 6 n.4.).

8. On June 22, 2021, CKY filed a Supplemental Notice to its Motion to Require Ms. Campbell to Amend Her Amended Complaint ("Supplemental Notice"). The Supplemental Notice informed the Court of additional information that Ms. Campbell and her counsel had become aware of since filing the Amended Complaint. That information unequivocally demonstrated that the KCWSD was one of the Unknown Defendants. For example, CKY cited the Kentucky Public Service Commission's ("PSC") Pipeline Damage Investigation Report (Incident ID: 43458) completed by Investigator John Gowins ("Gowins Report"), which discussed the KCWSD's "excavation operations" that caused Linda Sue Pridemore's and Tommy Lee Caudill's alleged injuries and damages. The Gowins Report concluded, among other things, that the KCWSD "struck and damaged the one-inch natural gas service line and then attempted to make unauthorized repairs using nontraditional natural gas pipeline repair methods." (*See, e.g.*, Gowins Report 1-2, attached as Exhibit A to CKY's Supplemental Notice.)

9. The PSC's investigation of the Incident—including the Gowins Report—resulted in the PSC finding that the KCWSD committed three violations of Kentucky's Underground Facility Damage Prevention Act. (*See id.* at 3.) Written admissions provided by the KCWSD to the PSC supported these violations and confirmed "that Knott County Water District employees hit the line, repaired the line themselves, *and did not notify Columbia about the damage*." (*See id.* (emphasis added).)

4

10. The Gowins Report's conclusions also prompted the PSC to send the KCWSD a Letter of Resolution summarizing the PSC's investigation and assessing a civil penalty against the KCWSD. (*See generally* June 8, 2021 Letter of Resolution, attached as Exhibit B to CKY's Supplemental Notice.)

11. As a final matter, CKY's Supplemental Notice referenced a second lawsuit that Ms. Campbell filed stemming from the February 27, 2021 Incident. Indeed, CKY attached as an exhibit a complaint that Ms. Campbell filed against the Kentucky Association of Counties All Lines Fund—the KCWSD's general liability insurer. That lawsuit is captioned *Samantha Campbell, et al. v. Kentucky Association of Counties All Lines Fund*, No. 21-CI-00126 (Knott Circuit Court) and alleges, among other things, that the KCWSD's actions were the direct and proximate cause of the Incident and Linda Sue Pridemore's and Tommy Lee Caudill's alleged injuries and damages. (*See* Complaint ¶ 13, *Samantha Campbell, et al. v. Kentucky Association of Counties All Lines Fund*, No. 21-CI-00126 (Knott Circuit Court), attached as Exhibit C to CKY's Supplemental Notice.)

12. On June 24, 2021, the Knott Circuit Court denied CKY's Motion to Require Ms. Campbell to Amend Her Amended Complaint, as well as CKY's Motion to Dismiss Ms. Campbell's Amended Complaint.

13. On July 12, 2021, Seth Combs, the Warning Order Attorney for the Unknown Defendants, filed his Warning Order Report. (*See, e.g.*, Warning Order Report, attached as Exhibit 6 (exhibits omitted) to CKY's Motion for Leave to File a Third Party Complaint.) Mr. Combs' Report identified five KCWSD employees as "individuals of the UNKNOWN DEFENDANTS, who have an interest, right(s), and/or obligation(s) germane to this [sic] events giving rise to this action . . . ." (*Id.* at 1.) Those KCWSD employees included Lance Jacobs, Avery Shrum, Benny

5

Jacobs, and Bryan King—in addition to Defendant Michael Jacobs, who Ms. Campbell had already named as a Defendant in her Amended Complaint.  (*Id.*)

14.     On July 16, 2021, CKY's counsel sent Ms. Campbell's counsel an email asking if, based on the Warning Order Report and pursuant CR 4.15(b), Ms. Campbell intended to file a second amended complaint.  (*See* 7/16/2021 Email at 12:45 p.m., attached as Exhibit 7 to CKY's Motion for Leave to File a Third Party Complaint.)  Ms. Campbell's counsel subsequently provided CKY's counsel with a one-word response: "No."  (*Id.*, 7/16/2021 Email at 1:30 p.m.)

15.     During an August 12, 2021 hearing on Mr. Combs' Motion to Accept the Warning Order Report, CKY objected to the entry of that Report because it did not name the KCWSD.  After some discussion, the Knott Circuit Court tabled argument on the issue and set Mr. Combs' Motion to Accept the Warning Order Report for a new hearing on September 1, 2021.  One day before that hearing, however, Mr. Combs filed a Supplemental Warning Order Report stating, among other things, that

> [t]he totality of documents and evidenced reviewed by the undersigned—including newly acquired documents[] from the Public Service Commission confirming that the KCWSD has stipulated to the various administrative violations and fines in this matter---*certainly provides a basis in fact for KCWSD to be named as a Defendant*. Research of existing Kentucky case law holds that a water district may not avail itself of the shield of sovereign immunity.[] *Thus, there appears to be a basis in law for KCWSD to be named as a Defendant*.

(*See* Supplemental Warning Order Report ¶ 8, attached as Exhibit 8 to CKY's Motion for Leave to File a Third Party Complaint (emphasis added; exhibits omitted).)  But despite there being an undisputed basis in fact and in law to name the KCWSD as a potential defendant, the Supplemental Warning Order Report did not name the KCWSD as an Unknown Defendant.[4]

---

[4] The Supplemental Warning Order Report also curiously stated that "neither of the currently named Defendants (i.e. CKY and/or Michael Jacobs) have yet to simply avail themselves of the relief afforded in CR 14 by moving the Court for leave to file a Third-Party Complaint against

16. On September 1, 2021, and following a hearing, the Knott Circuit Court accepted both Mr. Combs' Warning Order Report and Supplemental Warning Order Report.

17. With its alternatives exhausted, CKY sought leave to file a third-party complaint against the KCWSD because the KCWSD's known negligent acts and omissions caused the February 27, 2021 Incident. Therefore, on September 8, 2021, CKY filed a Motion for Leave to File a Third Party Complaint against the KCWSD, attaching its proposed Third-Party Complaint and exhibits as Exhibit A to that Motion.

18. On September 23, 2021, the Knott Circuit Court granted CKY's Motion for Leave and directed the Clerk to file CKY's Third-Party Complaint Against the KCWSD.

19. Twenty days prior to that date, on September 3, 2021, Ms. Campbell filed a "Motion for Substitution" to substitute Linda Sue Pridemore and Tommy Lee Caudill as Plaintiffs, which the Knott Circuit Court granted.

## II. Plaintiffs' Second Amended Complaint.

20. On February 3, 2022, Plaintiffs filed a "Motion to File 2nd Amended Complaint," attaching their proposed Second Amended Complaint as an Exhibit. That action is captioned *Linda Sue Pridemore, et al. v. Columbia Gas of Kentucky, Inc., et al.*, Civil Action No. 21-CI-00054 (the "State Court Action"). Plaintiffs' Second Amended Complaint named the following Defendants: CKY, NiSource (for the first time), the KCWSD (for the first time), Michael Jacobs, Jared Salmons (for the first time), Avery Shrum (for the first time), and Lance Jacobs (for the first time).

21. Plaintiffs never served NiSource's registered agent with the Second Amended Complaint. To avoid the need for service, however, Plaintiffs' counsel and counsel for NiSource

---

KCWSD, Cambridge Brass, The Pope, or even The Tooth Fairy, should they be so inclined, is simply mystifying." (*Id.* ¶ 11.)

7

and CKY agreed that the filing of NiSource's and CKY's responsive pleadings on Friday, February 18, 2022 constituted acceptance of service.[5] (*See* 2/16/2022 Email, attached as **Exhibit A**.)

22. Removal is both timely and properly filed because this Notice is filed within thirty days of its acceptance of service (indeed, the deadline to file the notice of removal is not until March 21, 2022). *See* 28 U.S.C. §§ 1446.

23. Venue is also proper in the United States District Court for the Eastern District of Kentucky, Pikeville Division, because the Knott Circuit Court is located within this District and Division. *See* 28 U.S.C. § 1441(a).

24. The crux of Plaintiffs' Second Amended Complaint claims against NiSource and CKY are two-fold. (Second Am. Pet. ¶¶ 47-87.) First, it alleges both NiSource and CKY were negligent in failing to install an excess flow valve ("EFV") on the subject split service line. (*See id.* ¶¶ 38-40, 76.) Second, it also seeks the application of strict liability by arguing that NiSource's and CKY's alleged operation of natural gas pipelines constitutes an "ultra-hazardous activity." (*See id.* ¶¶ 48, 65-66, 72, 86-87.) As explained below, both of these claims provide a basis for removal.

25. By removing the State Court Action to this Court, neither NiSource nor CKY admit any of the facts alleged in the Second Amended Complaint, or waive any defenses, objections, or motions available to them under state or federal law. Both NiSource and CKY expressly reserve

---

[5] On February 18, 2022, NiSource and CKY filed separate Motions to Dismiss Plaintiffs' Second Amended Complaint. Those Motions to Dismiss argue that the Knott Circuit Court lacks personal jurisdiction over NiSource; that Plaintiffs' strict liability allegations fail to state a cause of action against NiSource and CKY; that even if NiSource or CKY were negligent, which NiSource and CKY deny, the superseding and unforeseeable negligent (and illegal) actions of the Knott County Water and Sewer District ("KCWSD") precludes any finding that either NiSource or CKY caused or contributed to the Incident; and that federal law comprehensively and exclusively governs the installation of excess flow valves and preempts state tort claims that conflict with federal standards of care. The Knott Circuit Court has not issued any ruling on those Motions to Dismiss.

8

the right to challenge the adequacy of the allegations in the Second Amended Complaint. *See Granny Goose Foods v. Brotherhood of Teamsters*, 415 U.S. 423, 436 (1974) (explaining that after removal, the federal court "takes the case up where the State court left it off . . ." (citation omitted)).

**III.     Removal Is Appropriate Given Plaintiffs' Excess Flow Valve Allegations, Which Implicate Significant Federal Issues Through A Thorough and Expansive Federal Regulatory Regime.**

26.    Removal of the State Court Action is proper because Plaintiffs' claims arise under well-established federal law and regulatory schemes.

27.    The Supreme Court recognizes that "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Under *Grable*, a federal court may exercise federal question jurisdiction over a state law claim where: (1) the "state-law claim necessarily raise[s] a stated federal issue"; (2) the federal issue is "actually disputed and substantial"; and (3) the exercise of federal jurisdiction will not "disturb [] any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. In their Second Amended Petition, Plaintiffs assert state tort claims that rely upon alleged violations of federal law and/or regulatory schemes. The Amended Petition, therefore, presents "an important issue of federal law that sensibly belongs in a federal court," *Grable*, 545 U.S. at 315, and removal is appropriate pursuant to 28 U.S.C. § 1331.

28.    Plaintiffs' negligence claims against NiSource (and CKY) rely upon allegations that NiSource failed to install an EFV on the subject natural gas service line. Plaintiffs suggest that the installation of an EFV "could have prevented or significantly lessened the quantities of natural gas that escaped from the subject natural gas service line." (Second Am. Compl. ¶ 39; *see also id.* ¶ 40.) Plaintiffs go on to allege that "NiSource [and CKY] knew or should have known

9

that [EFVs] were available for gas lines, including the subject natural gas service line, and were designed and intended as a safety device that can automatically shut off or minimize gas flow to prevent large quantities of natural gas from escaping from a service line in the event such a line is damaged by excavation activities or is improperly repaired resulting in the line and its component parts becoming separated or insufficiently sealed to the degree that a significant flow of natural gas could escape from the service line, as occurred in regard to the subject natural gas service line after the attempted repair made by [the KCWSD] on January 14, 2021." (*Id.* ¶ 76; *see also id.* ¶ 68 (alleging, without support, that CKY is NiSource's "alter ego").)

29.     Federal law exclusively governs the installation of EFVs. Congress comprehensively regulates natural gas pipelines and facilities under the Commerce Clause through the National Gas Pipeline Safety Act of 1968 ("PSA"), 49 U.S.C. §§ 60101 *et seq.*, and the Department of Transportation ("DOT") regulations promulgated thereunder, 49 C.F.R. Part 192. Those rules and regulations form a comprehensive and extensive federal regulatory scheme regarding the transportation, delivery, and distribution of natural gas in the United States. Indeed, under the PSA, only a "state authority that has submitted a current certification under section 60105(a) of [the Act] may adopt additional or more stringent safety standards for intrastate pipeline facilities and intrastate pipeline transportation." 49 U.S.C. § 60104(c). And because the DOT has promulgated extensive rules governing when EFVs must be installed—none of which apply to the subject natural gas service line—Plaintiffs cannot utilize Kentucky common law to impose standards of care different from those impose by federal law. *See* 49 C.F.R. §§ 192.383

(governing, in a comprehensive manner, the installation of EFVs on natural gas service lines), 192.381 (governing EFV performance standards).[6]

30. Under their own allegations, Plaintiffs have asserted a claim that requires them to prove that NiSource and CKY violated federal law. Thus, Plaintiffs asserted a cause of action where violation of federal law is "an essential element" of the claim. *Grable*, 545 U.S. at 315. Plaintiffs have therefore asserted a claim "arising under" federal law and this Court may exercise federal subject matter jurisdiction over this dispute as a result. *Id.*

**IV. Removal Is Appropriate Given Plaintiffs' Ultrahazardous Activity/Strict Liability Allegations, Which Raise Significant Federal Questions.**

31. In addition to alleging that NiSource and CKY were negligent in failing to install an EFV on the subject natural gas service line, Plaintiffs also seek to hold NiSource and CKY strictly liable for the transportation of natural gas through pipelines they allegedly own and operate.

32. Plaintiffs clearly allege in their Second Amended Complaint that both NiSource and CKY should be held strictly liable for their injuries because the transportation of natural gas through its pipelines is an ultrahazardous activity. (Second Am. Compl. ¶¶ 48, 65-66, 72, 86-87.)

---

[6] The history of the EFV standards shows the thorough and thoughtful regime that was put in place. Moreover, NGA and DOT regulations comprehensively define and limit NiSource's obligations in the same way that Federal Motor Vehicle Safety Standards ("FMVSS") define and limit certain obligations for auto manufacturers. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000). For example, in *Geier*, pursuant to its authority under the National Traffic and Motor Vehicle Safety Act of 1966, the DOT promulgated FMVSS 208. That FMVSS required auto manufacturers to equip some but not all of their 1987 vehicles with passive restraints. *Id.* at 864-65. Petitioner Alexis Geier was injured in an accident while driving a 1987 Honda Accord that did not have such restraints. *Id.* at 865. She and her parents, also petitioners, subsequently sought damages under District of Columbia tort law, claiming, *inter alia*, that respondents were negligent in not equipping the Accord with a driver's side airbag—technology that existed at the time of manufacture. *Id.* But the United States Supreme Court held that Petitioners' "no airbag" lawsuit conflicted with the objectives of FMVSS 208 (which incorporated a temporally stepped deployment plan) and was therefore preempted by the Act. *Id.* at 866. Indeed, the Court found that conflict preemption principles preempted the Geiers' claims because, if allowed to proceed, their state tort law claims would stand as an "obstacle" to the accomplishment of the federal regulatory objectives and frustrate the purpose of federal law. *Id.* at 886.

More specifically, Plaintiffs allege that NiSource and CKY were "engaged in the ultra-hazardous activity of transporting and distributing natural gas to customers . . . through a system of pipelines owned by NiSource and [CKY], and owed a duty of extraordinary care to the Plaintiffs and other members of the public potentially impacted by their natural gas pipelines and facilities." (*Id.* at ¶ 72; *see also id.* ¶¶ 48, 65-66.)  Plaintiffs therefore allege that NiSource and CKY should be held "strictly liable" for Plaintiffs' injuries. (*Id.* ¶¶ 66, 87.)

33. Once again, however, Congress comprehensively regulates natural gas pipelines and facilities under the Commerce Clause through the PSA and the DOT regulations promulgated thereunder. *See* 49 U.S.C. §§ 60101 *et seq.*; 49 C.F.R. Part 192.

34. Moreover, a finding that the transmission and distribution of natural gas is an ultrahazardous activities would undermine and usurp the authority delegated by Congress to the DOT.  It would also upset years of settled standards of care that apply to natural gas utility companies and pipeline operators.  Consequently, Plaintiffs' Second Amended Complaint raises multiple important issue of federal law that sensibly belong in a federal court.  *See Grable*, 545 U.S. at 315.

35. For example, Plaintiffs' allegations suggest that a defendant could fully comply with PSA and DOT regulations (promulgated to provide the safe transportation of natural gas) and still be liable under state law.  Not only does such argument strain credulity, but it also entirely conflicts with federal regulations.  *See* 49 U.S.C. §§ 60101 *et seq.*; 49 C.F.R. Part 192.

*36.* Finally, this Court has supplemental jurisdiction over all other claims within the action pursuant to 28 U.S.C. § 1367(a).  Under that statute, a federal court can preside over additional claims that do not fall within its original jurisdiction where the claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or

controversy . . . ." *Id.*; *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (recognizing that supplemental jurisdiction under 28 U.S.C. § 1367(a) is proper where state law claims that accompany federal questions "derive from a common nucleus of operative fact").

## V.     Additional Removal Requirements Have Been Met.

37.     Undersigned counsel for NiSource and CKY has obtained the consent of all other Defendants to remove the State Court Action from the Knott Circuit Court to the United States District Court for the Eastern District of Kentucky, Pikeville Division.  *See* 28 U.S.C. § 1446(b); *see also Harper v AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201-02 (6th Cir. 2004) (concluding that only one attorney of record must sign a notice of removal so long as that attorney certifies the remaining defendants have consented).

38.     Pursuant to 28 U.S.C. § 1446(a) and Local Rule 83.1, copies of all pleadings and orders filed in the State Court Action are attached as **Exhibit B**.

39.     Pursuant to 28 U.S.C. § 1446(d), NiSource and CKY will promptly file a notice of this removal with the Knott Circuit Court, and a copy of the notice will be served on Plaintiffs.

40.     In sum, federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.  Pursuant to 28 U.S.C. § 1441(a), NiSource and CKY may remove the State Court Action from the Knott Circuit Court to the United States District Court for the Eastern District of Kentucky, Pikeville Division.

## VI.    Conclusion.

WHEREFORE, NiSource and CKY hereby remove the above-described action now pending in the Knott Circuit Court to the United States District Court for the Eastern District of Kentucky, Pikeville Division.

Respectfully submitted,

/s/ J. Brian Jackson
J. Brian Jackson
Kentucky Bar No. 94146
McGuireWoods LLP
323 Second St. SE, Ste. 700
Charlottesville, VA 22902
Telephone: (434) 980-2221
bjackson@mcguirewoods.com

Emily L. Startsman
STITES & HARBISON PLLC
250 West Main Street, Suite 2300
Lexington, KY  40507
Telephone: (859) 226-2300
estartsman@stites.com

Bethany A. Breetz
STITES & HARBISON PLLC
400 West Market Street, Suite 1800
Louisville, KY  40202
Telephone: (502) 681-0634
breetz@stites.com

*Counsel for Defendant NiSource Inc. and
Defendant and Third-Party Plaintiff
Columbia Gas of Kentucky Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically this 14th day of March, 2022. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

| | |
|---|---|
| Timothy C. Bates<br>Slone & Bates, P.S.C.<br>Attorneys At Law<br>P.O. Box 787<br>Hindman, Kentucky 41822<br>Telephone: (606) 785-5581<br>Email: tbates@slonebates.com | Randy G. Slone<br>Slone & Bates, P.S.C.<br>Attorneys At Law<br>P.O. Box 787<br>Hindman, Kentucky 41822<br>Telephone: (606) 785-5581<br>Email: slonebates@tgtel.com |
| Terry D. Jacobs<br>P.O. Box 991<br>Hindman, Kentucky 41822<br>Telephone: (606) 634-9876<br>Email: terrydjacobs@hotmail.com | Jonathan C. Shaw<br>Porter, Banks, Baldwin & Shaw, PLLC<br>327 Main Street<br>P.O. Drawer 1767<br>Paintsville, Kentucky 41240<br>Telephone: (606) 789-3747 Ext. 146<br>Email: jshaw@psbb-law.com |
| Calvin R. Tackett<br>40 Main Street<br>Whitesburg, Kentucky 41858<br>Telephone: (606) 633-0126<br>Facsimile: (606) 633-0972<br>Email: tackettlaw@att.net | E. Seth Combs<br>Jerry W. Wicker Law Office<br>P.O. Box 1590<br>Hindman, Kentucky 41822<br>Telephone: (606) 785-5556<br>Email: seth@sethcombs.net |

By:  /s/ J. Brian Jackson
J. Brian Jackson
*Counsel for Defendant NiSource Inc. and Defendant and Third-Party Plaintiff Columbia Gas of Kentucky Inc.*