UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 22-17-DLB

LINDA SUE PRIDEMORE, et al.                                                                 PLAINTIFFS

v.                              **MEMORANDUM OPINION & ORDER**

COLUMBIA GAS OF KENTUCKY, INC., et al.                                         DEFENDANTS

\*\*\*  \*\*\*  \*\*\*  \*\*\*  \*\*\*  \*\*\*

## I.     INTRODUCTION

This matter is before the Court on its own motion based on the Court's inherent power and duty to ensure the requirements for subject matter jurisdiction are satisfied in all cases. Plaintiff Samantha Campbell initially filed suit in Knott Circuit Court against Defendants. (Doc. # 1 at 1). Defendants Columbia Gas of Kentucky, Inc. ("CGKY") and its parent company, NiSource, Inc., then removed the action to this Court. (*Id.*). On March 17, 2022, the Court entered an Order requiring the parties to submit briefing as to why this Court has jurisdiction over the matter. (Doc. # 5). Plaintiffs have also filed a Motion to Remand. (Doc. # 13). Because Defendants have failed to meet their burden to prove that removal was proper and the Court thus lacks subject-matter jurisdiction, this matter will be remanded to Knott Circuit Court.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This action was originally commenced by Samantha Campbell, as Guardian and Next Friend of Linda Sue Pridemore and Pridemore's son, Tommy Lee Caudill. (Doc. # 1-3 at 2). Eventually Campbell was terminated and replaced with Pridemore and her son

1

as the named Plaintiffs. (Doc. # 1-7 at 19). This dispute centers around a natural gas explosion that destroyed Pridemore's home and severely injured Plaintiffs in February of 2021. (Doc. # 1-7 ¶ 12). Plaintiffs allege that Defendant Knott County Water & Sewer, Inc. ("KCW&S") conducted excavation activities that damaged an underground natural gas service line a month prior to the explosion. (*Id.* ¶ 13). The gas line was owned by Defendant CGKY. (*Id.*). Plaintiffs also allege that CGKY was aware of KCW&S's planned excavation and had sent an employee to mark the location of the service line to avoid damage. (*Id.* ¶¶ 15-16). While the employee did allegedly place flags in front of the Pridemore residence, no other marking took place, which Plaintiffs allege was improper. (*Id.* ¶¶ 17-18, 21).

After the gas line was damaged, KCW&S employees allegedly attempted to repair the line, which resulted in a gas leak and the explosion. (*Id.* ¶¶ 22-25). Plaintiffs allege that KCW&S's repair was improper and inadequate and that its employees were not trained or guided in working on the gas line. (*Id.* ¶¶ 33-34, 92-94). Specifically, Plaintiffs allege that KCW&S generally breached its duty to prevent injury and damage to Plaintiffs and others through its actions, such as failing to ensure safe repair and replacement of the damaged gas line. (*Id.* ¶¶ 96-106).

As to CGKY, Plaintiffs allege that its negligence also contributed to the explosion because it knew or should have known that the failure to maintain, monitor, inspect, alter, repair, and mark its pipeline, among other actions, could result in severe injury. (*Id.* ¶¶ 51, 58). Further, CGKY allegedly breached several duties including maintaining, marking, and detecting damage to its pipelines and training/supervising its employees properly. (*Id.* ¶¶ 54, 56-63). As a result, Plaintiffs suffered several categories of injuries and

damages. (*Id.* ¶ 65). Additionally, Defendant NiSource is the parent company and owner of CGKY. (*Id.* ¶ 67). Plaintiffs' allegations as they relate to NiSource are substantially similar to the ones made against CGKY. (*Id.* ¶¶ 73-87).

Importantly, Plaintiffs allege that Defendants NiSource and CGKY should have known that an excess flow valve ("EFV") could have been installed in the gas line and would have mitigated the damage or even prevented the explosion. (*Id.* ¶¶ 53, 76). Based upon the mention of an EFV in the Second Amended Complaint and Plaintiffs' allegation that the operation of a natural gas pipeline was an "ultra-hazardous activity," Defendants NiSource and CGKY removed the action to this Court by asserting federal question jurisdiction under 28 U.S.C. § 1331. (Doc. # 1 ¶ 24).

### III. ANALYSIS

#### A. Federal Question Jurisdiction

As an initial matter, Defendants—because they are the removing parties—bear "the burden of demonstrating federal jurisdiction, and *all doubts should be resolved against removal*." *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581-82 (6th Cir. 2007) (emphasis added) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006)). If removal was improper, the action should be remanded back to the originating state court; the order is not appealable. *See Dunch v. Nat'l Union Fire Ins. Co. of Pa.,* 43 F. App'x. 918, 920 (6th Cir.2002) (28 U.S.C. "[s]ection 1447(d) 'prohibits review of all remand orders issued pursuant to § 1447(c) whether erroneous or not and whether review is sought by appeal or by extraordinary writ.'") (quoting *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 343 (1976)).

A defendant may remove a civil action brought in state court to a federal court embracing the place where such action is pending only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. §§ 1441, 1446. Federal courts have original jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States," commonly referred to as federal-question jurisdiction. 28 U.S.C. § 1331.

Typically, federal-question jurisdiction is invoked by a plaintiff who pleads a cause of action that is created by federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This may include a right of action expressly created by statute, such as 28 U.S.C. § 1983, or a right of action that is implied from a statute, such as the right of private victims of discrimination to sue for violations of Title IX. *Id.*; *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979). However, "[t]here is . . . another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction," that has been recognized for over a century; that is "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312. The Court has noted that "[i]n outlining the contours of this slim category [of cases], we do not paint on a blank canvas. Unfortunately, the canvas looks like one that Jackson Pollock got to first." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). However, the Court has strayed from the belief that the mere need to apply federal law in a state-law claim will open the "arising under" door. *Grable*, 545 U.S. at 313.

    *1.*    **Arising Under**

Then, what does open the "arising under" door? That is not a simple question. The Supreme Court has explained that "federal jurisdiction demands *not only a contested*

4

*federal issue, but a substantial one*, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313 (emphasis added). This is not foolproof however as "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is still subject to possible veto." *Id.* Federal jurisdiction must still be consistent with "congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id*. at 313-14. Arising-under jurisdiction has the potential to upset "the state-federal line drawn (or at least assumed) by Congress," so much so that even "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive." *Id.* at 314 (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986)).

In short, there is no magic word to access the federal courthouse, as the Court has not "treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law." *Id.* The Sixth Circuit has elucidated a three-part test, known as the "substantial-federal-question doctrine," to determine whether federal question jurisdiction exists over a state-law claim: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007) (en banc). Yet the mere presence of a federal issue alone in a state-law claim is insufficient to confer federal question jurisdiction. *Id.* at 565. Lastly, but importantly, this Court is "mindful that state courts are generally presumed competent to interpret and apply federal law." *Id.* at 560.

5

### a. Necessarily Raised and Disputed

Defendants contend that a federal issue is both necessarily raised and disputed by Plaintiffs because federal law exclusively governs the installation of EFVs and the Pipeline and Hazardous Materials Safety Administration ("PHMSA") is the sole arbiter of Defendants compliance with federal pipeline safety standards; therefore, Plaintiffs' allegation that Defendants should have installed an EFV raises and casts into dispute federal EFV regulations. (Doc. # 6 at 10-11).

As an initial matter, Plaintiffs do not allege a violation of federal law or regulations in the Second Amended Complaint, nor do they challenge their interpretation. (Doc. # 1-7); *see also Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 589 (6th Cir. 2013) (finding a federal issue is not disputed when "it is clear with the benefit of briefing that there is no dispute over the interpretation of the federal law regulation natural gas carriers or pipelines.").

While Plaintiffs do in fact point to Defendants' failure to install an EFV (Doc. # 1-7 ¶¶ 38-40, 53, 76), they also indicate several other acts that would implicate Defendants under Kentucky tort law, such as their failure to failure to monitor, inspect, improve, alter, repair, replace, remove, locate and/or mark the pipeline (*id.* ¶¶ 52, 74); their failure to document the location of the pipeline (*id.* ¶¶ 58, 80); and their negligent supervision and training of employees (*id.* ¶ 59, 81). The lack of an EFV is only one theory under which Plaintiffs could *potentially* prove Defendants' alleged negligence. However, this does not constitute a necessarily raised and disputed federal issue. *Wolf v. Bankers Life and Cas. Co.*, 519 F. Supp. 2d 674, 689-90 (W.D. Mich. 2007) (noting that because the claims at issue included additional contested issues and theories of liability other than federal law,

they did not open the door to federal question jurisdiction).  Furthermore, the Sixth Circuit has noted that when "plaintiffs may win or lose regardless of whether defendants violated federal law; such a connection is more tenuous than what has previously made a federal issue necessarily raised."  *Fried v. Sanders*, 783 F. App'x 532, 536 (6th Cir. 2019). Likewise, Plaintiffs can still prove other theories of negligence on behalf of Defendants, independent of the lack of an EFV on the pipeline.  Therefore, the issue is not necessarily raised and disputed.

### b. Substantial

To determine if a federal issue is substantial, the Sixth Circuit considers four factors, in turn and in the aggregate:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski*, 501 F.3d at 570.  Notably, "no single factor is dispositive and these factors must be considered collectively, along with any other facts that may be applicable in a given case."  *Id.*

Just like in *Mikulski*, the first factor "weighs against characterizing the federal interest as substantial because there is no federal agency in this dispute."  *Id.*  Here, there is no question present about whether an "agency has complied with a statute or regulation."  *Id.*  And most importantly, while "the federal government may have an interest in the uniform application of regulations that relate" to gas pipelines, "it has only a limited interest in private tort or contract litigation over the private duties involved," with those pipelines.  *Id.*  Consequently, the first factor weighs against a finding that the federal issue

7

is substantial.

Similarly, the second factor weighs against finding that the EFV issue is substantial. Like the accounting provision in *Milkulski*, the installation of an EFV "does not implicate any broader or more substantial issue." *Id.* at 571. The installation of an EFV would simply help establish the standard of care in a state-law based negligence case. Further, resolving the EFV question would "not necessarily even resolve all aspects of [this] case, and it [would] provide little if any precedent for future cases." *Id.*; *Wolf*, 519 F. Supp 2d at 691 (finding that the federal issue was not substantial because it was only one of two bases for the negligence claim). Because the installation of an EFV is contingent upon various factors outlined in 49 C.F.R. § 192.383(b), determination of those requirements for this specific pipeline would do little by way of the federal government or even future cases in federal court.

The third factor asks whether resolution of the EFV question is dispositive of—rather than merely incidental to—the case. As noted above, the resolution of the EFV question would not resolve all the issues in this dispute. Again, like in *Mikulski*, even if the EFV question is resolved, "the plaintiffs must still prove the remaining elements" of their claims. 501 F.3d at 571. Even if answering the EFV question *could possibly* conclude the action, that possibility is still insufficient. *Id.* ("Therefore, conformity with [the statute] may, but will not necessarily, conclude the action.").

The final factor is subjective and an arguably closer call. Will the Court's decision as to federal question jurisdiction control other cases? Here, if the Court were to find federal question jurisdiction proper in this matter, it is likely that future plaintiffs in similar cases could simply include a sentence in the complaint alleging that an EFV should have

been installed. While such a finding would likely open the doors of federal court to more pipeline litigation, the use of an EFV in this matter is more of a question of the standard of care to which Defendants did or did not adhere in their alleged negligence. Therefore, it is unlikely that finding the installation of an EFV as heralding proper federal question jurisdiction would affect numerous other cases.

In the alternative, the Court does not understand why the Knott Circuit Court—which is fully competent and in which this matter has progressed much further—could not deduce, and apply the appropriate standard of care; the mere need to apply federal law does not confer federal-question jurisdiction.[1]  *Id.* at 572; *Grable*, 545 U.S. at 313, 318-19 ("One only needed to consider the treatment of federal violations generally in garden variety state tort law.  The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings.") (citations and internal quotations omitted).

Accordingly, the federal interest in this matter is not substantial.

### c. Federal-State Balance

Lastly, the Court must determine whether the exercise of jurisdiction would disturb any congressionally approved balance of federal and state judicial responsibilities. *Mikulski*, 501 F.3d at 568. While the "absence of a cause-of-action provision is not determinative, [it] certainly provides a starting point for this part of the analysis." *Id.* at 573; *Grable*, 545 U.S. at 318 (noting that "the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires.") (internal quotations omitted) (alteration in

---

[1]  Indeed, Defendants attached over 1000 pages of the state court record to their Notice of Removal.  (Docs. # 1-2, 1-3, 1-4, 1-5, 1-6, and 1-7).

original). The Court must further consider "the risk of upsetting the intended balance by opening the federal courts to an undesirable quantity of litigation." *Mikulski*, 501 F.3d at 573 (citations omitted). "The question is not whether such a holding will open the federal courts to analogous cases—under the most rudimentary concept of legal precedent it certainly will. The pressing questions are what cases would be analogous and how many would there be." *Id.*

Foremost, Plaintiffs do not allege any violation of federal law in the Second Amended Complaint, at most, they assert that Defendants failed to install an EFV in violation of federal regulations. (Doc. # 1-7 ¶¶ 38-40, 53, 76). Even if Plaintiffs did allege a violation of federal law, which Defendants argue would be under the Natural Gas Pipeline Safety Act of 1968 ("NGPSA"), the NGPSA only allows for private suits seeking injunctive relief. *See* 49 U.S.C. § 60120(a) (noting that the Secretary of Transportation may request that the Attorney General bring a civil action to enforce the NGPSA); 49 U.S.C. § 60121(a) ("A person may bring a civil action in an appropriate district court of the United States for an injunction . . . ."); *Abarca v. Chevron U.S.A., Inc.*, 75 F. Supp. 2d 566, 571 (E.D. Tex. 1999) (holding that the NGPSA did not provide for a private cause of action and that its cause of action for enforcement of regulations was insufficient to confer federal-question jurisdiction); *Stutler v. Marathon Pipeline Co.*, 998 F. Supp. 968, 970 (S.D. Ind. 1998) (noting that 49 U.S.C. § 60120(c) does not preempt state tort claims). While not determinative, the lack of a cause of action is indicative of congressional intent.[2]

---

[2] 49 U.S.C. § 60120(c) makes clear that "[t]his chapter does not affect the tort liability of any person." Additionally, 49 U.S.C. § 60121(d) provides that when a person seeks an injunction that "[a] remedy under this section is in addition to any other remedies provided by law." These provisions, when combined with the lack of a private cause of action, bolster the idea that Congress likely did not intend such a matter to be in federal court. *See Grable*, 545 U.S. at 318 ("[T]he Court treated the combination of no federal cause of action and no preemption of state

*Mikulski*, 501 F.3d at 573.

Important here, the Court in *Grable* noted that "[f]or if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases." 545 U.S. at 318. Likewise, allowing Plaintiffs' negligence action to remain in this Court would open the doors of federal courts to virtually any pipeline-related suit that alleges a violation of a federal regulation. While impossible to quantify, the number would not be insubstantial. *Columbia Gas*, 707 F.3d at 591 (noting that the increase in natural gas production, consumption, and transportation counsels against opening the federal courts to disputes over pipeline rights-of-way).

The same concern present in *Grable* cautions this Court from exercising jurisdiction: "[a] general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts." 545 U.S. at 319; *Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 712-13 (6th Cir. 2012) ("Finding a state-law negligence claim removable on the sole basis that the violation of a federal statute creates a presumption of negligence under state law would flout, or at least undermine, congressional intent . . . and would herald[] a potentially enormous shift of traditionally state cases into federal courts.") (internal quotations omitted). Indeed, litigants could simply allege violations of federal regulations to crowbar their claims into federal court.

---

remedies . . . as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331.")

Considering all of the factors and relevant precedent, Plaintiffs' claims do not belong in federal court and the Court lacks jurisdiction over this matter.[3]

### B. Plaintiffs' Request for Award of Attorney's Fees

Plaintiffs also request that the Court use its discretion under 28 U.S.C. § 1447(c) to award reasonable attorney's fees and costs because of Defendants' improper removal attempt. (Doc. # 8 at 29). While it is true that § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal," the Supreme Court has made clear that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

The court in *Gearheart v. Elite Insurance Agency, Inc.*, No. 15-103-ART, 2016 WL 81766 (E.D. Ky. Jan 7, 2016), addressed the very same issues presented here. In *Gearheart*, the plaintiff alleged that two companies failed to sell enough insurance to a motorist in violation of federal regulations. *Id.* at *1. Like Defendants here, the companies argued that when the plaintiff cited to those federal regulations, the state-law claims metamorphosized into federal claims. *Id.* Rightfully, the court was not convinced. *Id.* at 3. The court pointed out that plaintiff's claims alleged simple negligence and breach of contract. *Id.* at *2. Similar to the Second Amended Complaint in this matter, the court in *Gearheart* considered that nowhere in the complaint did the plaintiff identify a federal law that created a cause of action. *Id.*; (*see generally* Doc. # 1-7).

---

[3] While not specifically addressed by the Court, Defendants' arguments that Plaintiffs' claim of strict liability also raises a federal question (Doc. # 6 at 16-22) fail for the same reasons considered in this section.

12

Upon consideration of whether the claims implicated significant federal issues, the court reasoned that the *only* federal question was whether federal regulations required the defendants to provide a certain amount of insurance. *Gearheart*, 2016 WL 81766, at *3. The court found that the question was too fact-bound and specific and that answering it would not even dispose of the particular case, nor determine the outcome of other cases. *Id.* Furthermore, the court relied on several cases to hold that the defendants had no objectively reasonable basis to remove the case and awarded costs and attorney's fees. *Id.* at *3-4 (citing *Merrell Dow*, 478 U.S. at 816 (rejecting the argument that a state-law tort claim raised substantial federal question even though it required a court to interpret a federal misbranding provision); *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (rejecting the argument that a breach-of-contract claim raised a substantial federal question even though it sought to vindicate a contractual right contemplated by a federal statute); *Hampton*, 683 F.3d at 708 (rejecting the argument that a state-law claim raised a substantial federal question even though it required a court to interpret the Federal Railroad Safety Act); *Fochtman v. Rhino Energy, LLC*, No. 13-104-ART, 2013 WL 5701468, at *2 (E.D. Ky. Oct. 17, 2013) (rejecting the argument that a state-law tort claim raised a substantial federal question even though it required a court to interpret Federal Motor Carrier Safety Regulations)).

The plaintiff in *Gearheart* had at least alleged a violation of federal regulations in the complaint—something Plaintiffs here have not done—so arguing an objectively reasonable basis for removal here is even less defensible. Further, Plaintiffs allege a garden-variety negligence case, not even an additional breach of contract claim like the plaintiff in *Gearheart*. In their Reply, Defendants posit that because they correctly argued

13

under the *Grable* and *Gunn* framework and that the briefing by both parties was substantial, removal was not objectively unreasonable. (Doc. # 11 at 11-12). Defendants' arguments fall short. Establishing the correct legal framework does little more than show that the lawyers understood precedent. The length of the parties' briefing is also not indicative of Defendants' reasonability of removal, rather the current state of the law clarifies that. *See Gearheat*, 2016 WL 81766, at *3. Otherwise, parties could submit book-length briefing that is incomprehensible and argue that federal court is the appropriate forum for their dispute simply based on the number of pages of their briefing. However, state courts are perfectly capable of reading that same book. Hence, Plaintiffs' request for costs and attorney's fees is **granted**.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** that:

(1) Plaintiffs' Motion for Leave to File Excess Pages (Doc. # 10) is **GRANTED**;

(2) Plaintiffs' Motion to Remand to State Court (Doc. # 13) is **DENIED as moot** as the Court has concluded that remand is necessary on other grounds described herein;

(3) Plaintiff's Motion for costs and attorney's fees (Doc. # 8) is **GRANTED**. By **May 2, 2022**, Plaintiffs **SHALL FILE** a statement cataloguing their costs and expenses, including attorney's fees, incurred as a result of removal; and

(4) Pursuant to 28 U.S.C. § 1447, this case is **REMANDED** back to Knott Circuit Court.

This 18th day of April, 2022.



Signed By:

*David L. Bunning*   DB

**United States District Judge**